UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES WHITE, an individual; JEAN WHITE, an individual<br><br>Plaintiffs,<br><br>v.<br><br>5 ARCH INCOME FUND 2, LLC; 5AIF MAPLE, LLC; 5AIF MAPLE 2, LLC; 5AIF JUNIPER 2 DEP, LLC; 5AIF JUNIPER 2, LLC; 5 ARCH FUNDING CORP; PRESTIGE DEFAULT SERVICES, LLC; 5 ARCH HOLDINGS, LLC; 5 ARCH GROUP, LLC; DOES 1 through 10 and ROES BUSINESS ENTITIES 5 through 10, inclusive.<br>Defendants. | Case No. 2:22-cv-00133-ART-BNW<br><br>Order Granting Motion to Dismiss (ECF No. 33) |

Plaintiffs James White and Jean White bring this case alleging multiple causes of action related to a foreclosure. Before the Court is Defendants' Motion to Dismiss (ECF No. 33).

**I.   BACKGROUND**

This case concerns the foreclosure of property in Las Vegas, Nevada. On March 19, 2019, Plaintiffs executed a promissory note ("Note") with Pinnacle Lending Group, Inc. ("Pinnacle") in order to purchase the property and secure future advances for improvements to and construction on the property. (ECF Nos. 25 at ¶¶ 19-20; 25-1.) The Note was secured by a Deed of Trust ("DOT-1601"), executed on March 19, 2019, creating a lien on the property that was recorded in the Clark County Recorder's Office on March 27, 2019. (ECF Nos. 25 at ¶ 21; 25-2.) Simultaneously, an Assignment of the Note and DOT-1601, asserting Pinnacle sold all beneficial interest in the Subject Property and assigned, and/or transferred all beneficial interest to Defendant ARCH Funding ("ADOT-1602") was recorded in the Clark County Recorder's Office. (ECF Nos. 25 at ¶22; 25-3.) On

1

1  March 21, 2019, ADOT-1602 was executed. (ECF No. 25 at ¶ 23.) On March 27,
2  2019, simultaneously with the recordation of DOT-1601 and ADOT-1602, an
3  Assignment of the Note and DOT-1601, asserting Defendant ARCH Funding sold,
4  assigned, and/or transferred all beneficial in the "Property" ("ADOT-1603") was
5  recorded in the Clark County Recorder's Office. (*Id.* at ¶ 24; ECF No. 25-4.)
6      On May 27, 2020, Plaintiffs executed a loan modification agreement with
7  Defendant Juniper 2 to extend the loan maturity of the loan while still allowing
8  for future advances to pay for the engineering required to renew the building
9  permits, as well as for other construction and improvements to the property. (ECF
10 Nos. 25 at ¶ 54; 25-6.) Defendant Juniper 2 allegedly refused to authorize the
11 advancements and/or disbursements. (ECF No. 25 at ¶ 55.) On July 23, 2020,
12 Plaintiffs executed a second loan modification agreement with Defendant Juniper
13 2 extending the loan maturity of the loan with the understanding that Juniper 2
14 would make the advancements/disbursements. (*Id.* at ¶ 56; ECF No. 25-7.) The
15 second loan modification agreement raised the interest rate of the loan from nine
16 and one quarter percent (9.25%) to ten percent (10%) and included a Loan
17 Extension Fee of Eight Thousand Four Hundred Thirty Dollars and Zero Cents
18 ($8,430.00). (ECF No. 25 at ¶ 57.) Juniper 2 again refused to authorize the
19 disbursements/advancements. (*Id.* at ¶ 58.)
20     On July 14, 2021, Defendant Prestige executed a Notice of Breach and Default
21 ("NOD"). (*Id.* at ¶ 59; ECF No. 25-8.) At the time of the execution of the NOD by
22 Prestige, Premium Title, not Prestige, was the Trustee under the DOT, because
23 no Substitution of Trustee (SOT) had been recorded in the Clark County
24 Recorder's Office. (ECF No. 25 at ¶ 61.) The SOT was not recorded until July 15,
25 2021. (*Id.* at ¶ 62; ECF No. 25-9.) On December 8, 2021, a Notice of Trustee's
26 Sale (NOTS) was recorded. (ECF Nos. 25 at ¶ 63; 25-10.) On January 19, 2022,
27 Plaintiffs informed the Loan Servicer and Defendants that the non-judicial
28 foreclosure was statutorily defective, the NOD contained erroneous information,

and ADOT-13 was null because it was executed two days prior to the execution of ADOT-12. (ECF No. 25 at ¶ 64.) Defendants refused to rescind the NOD or correct any alleged defects. (*Id.* at ¶ 65.)

On January 25, 2022, Plaintiffs filed the present action and recorded a lis pendens. (*Id.* at ¶ 66; ECF No. 25-11.) On January 27, 2022, Defendants sold the property at a Trustee's Sale. (ECF No. 25 at ¶ 70.) On February 9, 2022, a Trustee's Deed was recorded in the Clark County Recorder's Office. (*Id.* at ¶ 71; ECF No. 25-12.) On July 7, 2022, Defendant Juniper 2 filed a complaint in the Eighth Judicial District Court for Clark County seeking a deficiency judgment. (ECF Nos. 25 at ¶ 72; 25-13.)

## II. LEGAL STANDARD

A court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).

At the pleading stage, *Twombly* and *Iqbal* "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*. 550 U.S. at 556. Under *Twombly* and *Iqbal*, "[a] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Then, the court should assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

///

### III. DISCUSSION

#### a. Violation of NRS 107.028 Against Defendant Prestige

Plaintiffs first allege that Defendant Prestige violated NRS 107.028. NRS 107.028 states that "[t]he appointment of a new trustee is not effective until the substitution of trustee is recorded[.]" NRS 107.028(5). At the time Plaintiffs filed their complaint, Prestige allegedly had not been appointed as trustee under DOT-1601, so Plaintiffs claim that they had no authority to execute and record a NOD nor sell the property in question. (ECF No. 25 at ¶ 83.) Plaintiffs argue that because Prestige allegedly violated NRS 107.028, the Court should award damages, enjoin any further sales, and reinstate Plaintiffs as owners of the property. (*Id.* at ¶ 86.)

Plaintiffs' claim fails because they lack standing. Plaintiffs had voluntarily divested themselves of ownership of the property in June 2021. (ECF No. 33 at 24-26.) "An action must be prosecuted in the name of the real party in interest." FED. R. CIV. PRO. 17(a)(1). At the time of the foreclosure sale on January 27, 2022, Meritage LLC owned the property (ECF No. 33 at 24-26), so Plaintiffs cannot assert a claim for statutorily defective foreclosure.

Furthermore, NRS 107.080 does not require absolute compliance. "[A] sale made pursuant to [NRS 107.080(5)] must be declared void by any court of competent jurisdiction in the county where the sale took place if [t]he trustee or other person authorized to make the sale does not *substantially comply* with the provisions of this section." NRS 107.080(5)(a) (emphasis added). "Courts have defined substantial compliance as compliance with essential matters necessary to ensure that every reasonable objective of the statute is met." *Williams v. Clark Cnty. Dist. Att'y*, 50 P.3d 536, 541 (Nev. 2002). This Court has found substantial compliance with NRS 107.080 even when the agent for the trustee had not been formally substituted as the foreclosure trustee until after it had issued the notice of sale because this happens often in foreclosures and the fact that the agent was

1 formally substituted later appeared to show ratification of the agent's conduct. *Wensley v. First Nat. Bank of Nevada*, 874 F.Supp.2d 957, 965 (2012).

Here, Defendants substantially complied with NRS 107.080. Prestige signed the Notice of Default a day earlier than the substitution was recorded. (ECF No. 25 at ¶¶ 79, 80, 141). This appears to be a de minimis violation, especially in light of the fact that the Notice of Default included an Affidavit of Authority making clear that Prestige was serving as the trustee and that 5AIF Juniper 2 was in possession of the original Note. (ECF No. 25-8 at 8-12.) The Court holds that the fact that Prestige signed the Notice of Default a day early does not prevent a finding of substantial compliance.

b. Declaratory Relief

Plaintiffs also plead multiple causes of action for declaratory relief. First, Plaintiffs request that this Court find that 1) the DOT-1601 was not enforceable until it was recorded in the Clark County Recorder's Office on March 27, 2019; 2) assignment ADOT-1602 is null because it was executed six days prior to DOT-1601 becoming enforceable; 3) assignment ADOT-1603 is null because it was executed two days prior to assignment ADOT-1602 being executed; and 4) assignment ADOT-4010 is null since ADOT-1602 and ADOT-1603 are null and thus Defendant Maple 2 lacked beneficial interest in the Note and DOT-1601 to execute ADOT-4010.

The Court will grant Defendants' Motion to Dismiss the claims for declaratory relief. "Any assignment of a mortgage of real property and any assignment of the beneficial interest under a deed of trust must be recorded in the office of the recorder of the county in which the property is located, and from the time any of the same are so filed for record shall operate as constructive notice of the contents thereof to all persons." NRS 106.210. "A mortgage of real property which has been assigned may not be enforced unless and until the assignment is recorded pursuant to this subsection." *Id.* "The instrument [encumbering real property] is

1 enforceable only if the instrument…is recorded in the office of the county recorder
2 of the county in which the real property is located and the party seeking to enforce
3 the instrument[.]" NRS 106.360.

4     Here, Plaintiffs ask this Court to declare that multiple assignments are invalid
5 because they were executed before being recording. As NRS 106.210 indicates,
6 the purpose of recording is to ensure third parties have constructive notice. *See*
7 NRS 106.210 ("record shall operate as constructive notice of the contents thereof
8 to all persons."); *see also* NRS 111.315 (stating that recording conveyances of real
9 property and instruments operates "as notice to third persons"). As such, parties
10 should not be able to execute an instrument encumbering real property unless
11 they provided notice through recording. However, notice is not an issue here
12 because all of the assignments were eventually recorded. Furthermore, Plaintiffs
13 and 5AIF Juniper 2, LLC signed a loan modification agreement explaining that
14 "[a]ll of lender's rights, title and interest in, to and under the Loan and Loan
15 Documents have been validly assigned to Lender." (ECF No. 25-7 at 2.) The
16 agreement also stated that "[a]s further material inducement to Lender to enter
17 into this Agreement, Borrower represents, warrants to, and covenants with,
18 Lender that as of the Effective Date: … [t]he Recitals in this Agreement are true
19 and correct in all respects." (*Id.* at 3.) Thus, Plaintiffs had recognized 5AIF Juniper
20 2, LLC was validly assigned its rights and should not be able to question the
21 assignment now.

22           c. Statutorily Defective Foreclosure Against All Defendants

23     Plaintiffs next allege that the Trustee's sale was statutorily defective.
24 Plaintiffs argue that because Defendant Prestige executed the NOD prior to its
25 substitution as Trustee under DOT-1601 in violation of NRS 107.028(5), it lacked
26 the authority to record the NOD, conduct the sale, nor record a Trustee's Deed.
27 (ECF No. 25 at ¶ 141.) As a result, Plaintiffs ask this Court to order that the
28 Trustee's sale was statutorily defective, rescind the sale, and reinstate Plaintiffs

as owners of the property. (*Id.* at ¶ 142.)

Plaintiffs' claim fails to state a viable claim upon which relief can be granted. For the same reasons discussed above with regards to Plaintiffs' claim against Defendant Prestige for violation of NRS 107.080, Plaintiffs lack standing to bring this claim. Plaintiffs had voluntarily divested themselves of ownership of the property in June 2021. (ECF No. 33 at 24-26.) "An action must be prosecuted in the name of the real party in interest." FED. R. CIV. PRO. 17(a)(1). Meritage LLC owned the property at the time of the foreclosure sale (ECF No. 33 at 24-26), so Plaintiffs cannot assert a claim for statutorily defective foreclosure. In addition, the NOD correctly identifies the foreclosing beneficiary. The Deed of Trust was transferred to 5AIF Juniper 2, LLC on April 4, 2019, and the NOD, recorded on July 15, 2021, includes an Affidavit of Authority to Exercise the Power of Sale identifying 5AIF Juniper 2, LLC as the holder of the Note and the beneficiary of the Deed of Trust. (ECF No. 25-8 at 8-12.) Because the Court has already dismissed Plaintiffs' argument that 5AIF Juniper 2, LLC was not the valid beneficiary because of alleged assignment issues, it will also dismiss Plaintiffs' statutorily defective foreclosure cause of action.

d.  Violation of NRS 107.080 against Defendant Juniper 2

Plaintiffs further argue that Defendant Juniper 2 violated NRS 107.080(8) by failing to comply with NRS 107.080(2)-(4). (ECF No. 25 at ¶ 145.) Specifically, they allege that Defendant Juniper 2, having never been the Beneficiary or successor in interest to the beneficiary, acted without authority to execute and record the SOT under the DOT-1601. (*Id.* at ¶ 149.)

The Court will dismiss this cause of action for failure to state a viable claim for which relief could be granted. The Court has already found that the assignments were valid, so Juniper 2 was the beneficiary and had the authority to substitute Prestige as the Trustee. Thus, Plaintiffs cannot proceed with this claim.

e. Violation of 15 U.S.C. § 1692

Plaintiffs next allege that Defendants violated 15 U.S.C. § 1692, also known as the Fair Debt Collection Practices Act ("FDCPA"), by engaging in "abusive, deceptive, and unfair debt collection practices" by 1) not disclosing the true and correct beneficiary of the loan; 2) executing documents before their prerequisites were executed/recorded; and 3) recording documents containing false information. (*Id.* at ¶ 157.) Plaintiffs explain in their Opposition to the Motion to Dismiss that all assignments after the initial assignment were void, so none of the subsequent assignees were creditors or had the authority to foreclose. (ECF No. 34 at 11.)

"The FDCPA 'prohibits debt collector[s] from making false or misleading representations and from engaging in various abusive and unfair practices.'" *Gryglak v. HSBC Bank USA, N.A.*, No. 22:15630, 2023 WL 3243998, at *3 (9th Cir. May 4, 2023) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the FDCPA does not apply if the entity is "the person who originated the debt, such as a creditor to whom the debt was originally owed[.]" 15 U.S.C. § 1692a(6)(F)(ii). is not considered a debt collector."

This claim fails for multiple reasons. First, Plaintiffs' complaint appears to solely focus on the foreclosure and does not discuss any debt collection practices to implicate the FDCPA. In addition, this claim reasserts arguments about issues with the assignment, which the Court has already found unpersuasive. Furthermore, Plaintiffs' complaint "contained no facts suggesting that Defendants' 'principal purpose' is debt collection, or that [they] 'regularly collect[] or attempt[] to collect' debts owed to another. *Gryglak,* 2023 WL 3243998, at *4

(internal citations omitted). "And Defendants' [alleged] 'collection efforts ... relate only to debts owed to itself,' because it had received beneficial interest in the loan[.]" *Id.* (citing *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1209 (9th Cir. 2013)). Thus, the Court will dismiss this cause of action for failing to state a claim upon which relief could be granted.

      f. Breach of Contract

Plaintiffs also bring a claim for breach of contract. Plaintiffs allege that Defendants ARCH Funding, ARCH Income, Maple 2, Juniper 2 DEP, Juniper 2, ARCH Holdings, and ARCH Group committed breach of contract by 1) failing to make construction disbursements; 2) changing disbursement requirements arbitrarily and without consent or notice to Plaintiffs; 3) enticing Plaintiffs to modify the note/loan for the sole purpose of making future construction disbursements and then failing to do so; 4) charging for loan extensions fee under the enticement of making future construction disbursements and then failing to do so; 5) drafting a note/loan document; and (6) fashioning loan terms and policies after entering the contract that prevented Plaintiffs from receiving their benefit under the contract. (ECF No. 25 at ¶ 193.)

Plaintiffs fail to allege a viable breach of contract claim. "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). At the pleading stage, *Twombly* and *Iqbal* "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly.* 550 U.S. at 556. Under *Twombly* and *Iqbal*, "[a] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*,

556 U.S. at 664. Then, the court should assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Here, Plaintiffs have not met *Twombly* and *Iqbal*'s pleading standards. Plaintiffs' breach of contract claim primarily relates to construction disbursements, but provides no information about these disbursements, including how Defendants allegedly interfered with the disbursements or what contractors, subcontractors, or suppliers were involved. In addition, the complaint fails to identify which Defendants breached the contract and the specific role played by each Defendant or provide any dates or additional information to support a breach of contract claim. Thus, Plaintiffs fail to allege a claim with "facial plausibility" that would allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

g. Abuse of Process

Plaintiffs allege that Defendants committed abuse of process by forum shopping and filing a state court action in the Eighth Judicial District Court for Clark County, Nevada seeking a deficiency judgment. (ECF No. 25 at ¶ 201.) "To support an abuse of process claim, a claimant must show (1) an ulterior purpose by the party abusing the process other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 519 (Nev. 2015) (internal citations omitted). "[T]he claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose." *Id.* (citing *LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002)).

The Court finds that Plaintiffs failed to show that Defendants had an "ulterior purpose." Plaintiffs simply allege that Juniper 2 forum shopped by filing the state court action and that Juniper 2 should have known that they were supposed to bring such claims in this case. (ECF No. 25 at ¶¶ 201-202.) These

1 allegations fail to provide "enough fact[s] to raise a reasonable expectation that
2 discovery will reveal evidence of [the claim]." *Twombly.* 550 U.S. at 556. Thus,
3 the Court will dismiss the abuse of process claim for failure to state a claim upon
4 which relief can be granted.

        h. Adhesion Contract

Plaintiffs lastly bring a claim alleging that Defendants "attempted to enforce an adhesion contract against Plaintiffs." (ECF No. 25 at ¶ 206.) Allegedly, the Note "used terms unconscionable to the average person." (*Id.* at ¶ 210.) In addition, Plaintiffs claim that they "were in a significantly weaker bargaining position and had to accept the terms as provided by Defendants without ability to bargain with Defendants." (*Id.* at ¶ 211.) According to Plaintiffs, "[t]he terms enforced by Defendants, namely the failure to pay disbursements and advancements when required, would not have been agreed to by Plaintiffs if they truly understood how Defendants would enforce them against Plaintiffs." (*Id.* at ¶ 212.)

An adhesion contract is "a standardized contract form offered to consumers … on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain." *Burch v. Second Judicial Dist. Court of State ex rel. County of Washoe*, 49 P.3d 647, 649 (Nev. 2002) (quoting *Obstetrics and Gynecologists v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985)). "The distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms." *Id.* (quoting *Pepper*, 693 P.2d at 1260.) Courts may enforce an adhesion contract "where there is plain and clear notification of the terms and an understanding consent and if it falls within the reasonable expectations of the weaker…party." *Id.* (internal citations omitted). However, courts need not "enforce a contract, or any clause of a contract…that is unconscionable." *Id.* (citing NRS 104.2302(1)).

Plaintiffs fail to state a claim upon which relief can be granted. First, Plaintiffs state that the Note "used terms unconscionable to the average person." (ECF No. 25 at ¶ 210), but they fail to identify any specific term or allege how they are

unconscionable. In addition, Nevada courts do not apply an average person standard when evaluating whether an adhesion contract exists. *See, e.g., KJH & RDA Inv. Grp., LLC v. Eighth Judicial Dist. Court of State ex rel. County of Clark*, 281 P.3d 1192 (Table) (Nev. 2009) (unpublished) (comparing plaintiffs, "self-described real estate investors" to "the average consumer, who faces adhesion contracts as a reality of obtaining basic goods and services"). Even construing all factual allegations in favor of Plaintiffs, Plaintiffs have not plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). Thus, the Court will grant Defendants' motion to dismiss this claim.

i. Withdrawn Causes of Action

In its Opposition to Defendants' Motion to Dismiss, Plaintiffs withdrew the following causes of action: 1) its Ninth Cause of Action for violation of 15 U.S.C. § 1641; 2) its Tenth Cause of Action for violation of 18 U.S.C. § 1962; and 3) its Eleventh Cause of Action for fraud by concealment. The Court will dismiss these causes of action.

**IV.  CONCLUSION**

It is therefore ordered that Defendants' Motion to Dismiss (ECF No. 33) is granted.

It is further ordered that the Clerk of Court enter judgment in favor of Defendants and close this case.

DATED THIS 31st day of March 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE